FILED
2012 Sep-24 PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **JEREMY S. JOHNSON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 6:11-CV-2543-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF** } | |
| **SOCIAL SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Jeremy S. Johnson brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") benefits under Title XVI of the act. 42 U.S.C. §§ 405(g), 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.  Proceedings Below**

This action arises from Plaintiff's applications for Title II Social Security disability, disability insurance benefits, and Title XVI Supplemental Security Income, both dated June 1, 2009, alleging disability beginning on November 1, 2008. (R. 106, 108). These applications were denied by the Social Security Administration on August 11, 2009. (R.77, 80). On October 16, 2009, Plaintiff requested a hearing before an administrative law judge (an "ALJ"). (R. 89). His request

was granted and a hearing was held in Cullman, Alabama on September 29, 2010 by video teleconference, with the ALJ presiding from Florence, Alabama. (R. 13).

In her decision, dated December 9, 2010, the ALJ determined that Plaintiff meets the insured status requirements of the Act through June 30, 2010 and has not engaged in substantial gainful activity since his alleged onset date of disability of March 20, 2007. (R. 15, 31). The ALJ further determined that Plaintiff was precluded from performing past relevant work. (R. 29). However, based on the testimony of the vocational expert, the ALJ determined Plaintiff was not disabled because he was capable of adjusting to other work that existed in significant numbers in the national economy. (R. 31). On May 9, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review.

At the time of the hearing, Plaintiff appeared in person along with counsel and Marcia H. Schulman, a vocational expert. Plaintiff was 34 years old, has a high school education, and has completed several years of college. (R. 66, 126, 175-78, 276). Previous work experience include: skilled work as a draftsman; semi-skilled labor as an assembler for mobile homes, furniture assembler, and mattress maker; and unskilled work as a warehouse worker. (R. 57-58, 119-24, 149). Plaintiff last worked on June 1, 2006, over two years before the onset date of his disability which he has alleged. (R. 121, 235).

While Plaintiff alleges disabling impairments to his back, head, and right arm in his application for disability, he limits his appeal of the ALJ's decision only to his migraine headaches and his right arm. (*See* Pl. Mem.16-20). Plaintiff's alleged disabilities resulted from a motorcycle accident that occurred in 1996. (*See* R. 180-93).

On May 25, 1996 Plaintiff was admitted to DCH Regional Medical Center for several injuries sustained from a motorcycle accident. (R. 180). Plaintiff was not wearing a helmet when he fell off his motorcycle and hit a tombstone. (*Id*.). The accident resulted in facial fractures, fracture of the right temporal skull, fracture of right humeral shaft and juncture of the upper and middle thirds of the radius and ulna, and cerebral contusion. (R. 48-49, 180-89). In other words, Plaintiff's face and right arm were badly damaged with multiple breaks and fractures. Plaintiff underwent an ORIF (Open Reduction Internal Fixation) procedure and a metal plate was placed into his head. (R. 191-92, 194). Plaintiff was seen by several physicians, including an orthopaedist, neurosurgeon, ophthalmologist, and maxillofacial surgeon. (R. 180, 182, 186-87, 189, 193). His examinations revealed that Plaintiff's extremities were able to move appropriately, no neurological focal deficits existed, and a cerebellar exam was unremarkable. (R. 182, 189). He was started on Dilantin prophylactically and released from the hospital. (R. 182, 189, 193).

Only four months later on September 15, 1996, Plaintiff re-injured his right arm and hand when he was involved in another motor vehicle accident. (R. 194). Plaintiff was seen by Dr. H. Chester Boston, an orthopaedic surgeon, on October 8, 1996 who x-ray-ed Plaintiff's arm. (R. 194-97). Dr. Boston noted a healing proximal radius fracture with a plate and a fracture of the distal portion of the plate with inadequate alignment. (R. 194). Plaintiff's fingers and wrist had good flexion and extension, although those movements caused pain. (R. 195). Plaintiff's neurological findings were normal, including good cerebral and cerebellar function. (*Id*.). Plaintiff underwent ORIF during this visit and did not see Dr. Boston again until almost a year later. (R. 196-98).

On June 5, 1997, Dr. Boston removed the hardware from Plaintiff's previous ORIF. (R. 200-01). At the time, Dr. Boston noted Plaintiff's neurological function to be normal with no other abnormalities apparent. (R. 199-200). Dr. Boston also noted healing of Plaintiff's fractures from

3

x-rays of his right arm and hand. (R. 198). Lastly, Dr. Boston noted that Plaintiff was off medications and reported employment for Crown Housing. (R. 199).

After Plaintiff was denied benefits in a previous Social Security application, Plaintiff sought treatment from Dr. Scott H. Boswell. (R. 73, 203-45). From December 2008 to July 2009, Plaintiff was seen on at least six different occasions. (R. 203-04, 212, 215, 219, 238-40). Initially, Plaintiff complained of severe and continuous pain to his head and right arm. (R. 219, 230-35). During one evaluation, Plaintiff tested positive for methadone, methamphetamines, and marijuana. (R. 212-14). Dr. Boswell noted no abnormalities in Plaintiff's extremities as well as no neurological deficits. (R. 220).

Plaintiff made continued complaints of his pain during his treatment under Dr. Boswell. Plaintiff describe the extent of his pain to be a 7 to 8 out of 10 (R. 238, 245), and the pain was only slightly reduced when he used pain medications. (R. 232-33, 239). During this period, Plaintiff was tested again for drugs in March, 2009, which came back negative. (R. 207-09). Although the findings from Dr. Boswell's physical examinations remained normal, Dr. Boswell continued to diagnose Plaintiff with migraines and post-traumatic headaches. (R. 204, 215, 239). Dr. Boswell's physical examinations also reveal Plaintiff had no edema of his extremities nor any neurological deficits. (R. 215). While Plaintiff was being treated by Dr. Boswell, he applied for disability on June 1, 2009. (R. 128).

On October 12, 2009, Plaintiff began treatment under Dr. Jeffery Long for pain management. (R. 260). Plaintiff was treated by Dr. Long on eight separate occasions until April 5, 2010. (R. 253-60). Although his records show that Plaintiff complained of several ailments, including chronic headaches, migraine, back pain, anxiety, and seasonal allergies, Dr. Long's physical examinations consistently revealed very little abnormalities. (*See id.*). Besides some abnormalities associated

4

with Plaintiff's joints and muscle tenderness, Dr. Long's examinations only revealed single, isolated instances of abnormalities in sinuses and mood and affect. (*See id*.). Dr. Long's diagnoses predominantly consisted of headaches and right facial pain, though no diagnoses associated with Plaintiff's right extremities. (*See id*.). Dr. Long prescribed a fluctuated medicinal regimen to address Plaintiff's reported pain and anxiety, and no other objective tests were conducted. (*See id*.). During the treatment period, Dr. Long consistently noted that medication helped Plaintiff's pain and anxiety. (R. 253-59).

Plaintiff began seeing Muhammad W. Ali on April 27, 2010, to whom he reported severe daily headaches and back pain. (R. 272). Dr. Ali treated the patient for four months until August 20, 2010, though the records are only available through July 27, 2010. (R. 262-63). During this period, Dr. Ali conducted several tests, including x-rays of Plaintiff's lumbar spine, nerve testing of all four extremities, drug testing at each visit, and an MRI. (R. 262, 264-65, 269, 271, 274). Plaintiff complained, among many things, of headaches, lower back pain, anxiety, and depression throughout his visits. (R. 264, 271-72).

Dr. Ali's testing results showed very little abnormalities, though the MRI results were not disclosed and available for the record. (R. 16, 53, 264, 271). During physical examinations, Dr. Ali noted that Plaintiff had normal muscle tone and no abnormality of movements to the extremities and no muscle atrophy, edema, neurological deficits or abnormal psychiatric symptoms. (R. 264, 271, 273). Plaintiff's drug tests were consistently negative, and the results of Plaintiff's nerve testing was normal. (R. 262, 264-65, 269, 271, 274). Besides noting Plaintiff's complaints about pain, Dr. Ali made no other objective findings when he diagnosed headache and paresthesia. Dr. Ali's treatment of Plaintiff, like that of Dr. Long, included a fluctuated medicinal regimen and an epidural steroid injection for lower back pain. (R. 263, 265, 269, 271, 273). While Dr. Ali did refer Plaintiff to see

Dr. Samia S. Moizuddin to receive treatment for elevated blood pressure, Dr. Ali did not refer Plaintiff for any other specialized treatment associated with Plaintiff's symptoms. (R. 266-69).

Plaintiff visited Dr. Moizuddin on May 28, 2010 to establish a primary doctor relationship and evaluate his blood pressure. (R. 266-68). Plaintiff complained of several things, including headaches, nonspecific arthralgias, and numbness in his fingers and toes. (R. 266). Dr. Moizuddin's examination of Plaintiff found largely normal functioning: muscle strength, muscle tone, extremities, and neurological functions were normal. (R. 266-67). However, an electrocardiogram ("EKG") was reported to be abnormal. (R. 267). Dr. Moizuddin conducted no other testing when he diagnosed Plaintiff with mild hypertension, headaches, nonspecific arthralgias, fatigue and abnormal EKG.

Plaintiff's attorney next recommended Plaintiff to see Dr. Alan D. Blotcky, a psychologist, for a consultative evaluation on September 27, 2010. (R. 276-80). During this meeting, Plaintiff reported that he spends his time doing light housework, preparing simple meals, and watching television. (R. 276). He also reported playing the guitar occasionally and he drove a truck. (*Id*.). After reviewing other symptoms and administering an intelligence test, Dr. Blotcky diagnosed PTSD and borderline intellectual functioning, and opined Plaintiff's prognosis to be poor based on the combination of these diagnoses. (R. 277-78). Two days later, the ALJ hearing was held on September 29, 2010. (R. 213).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step analysis. 20 C.F.R. § 404.1520(a) (2012). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work

6

activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. Before proceeding to steps four and five, the ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. 404.1520(f). If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In this case, the ALJ determined that Plaintiff: (1) has not engaged in substantial gainful activity since the onset of his alleged disability on November 1, 2008; (2) does have severe

medically determinable impairments—namely, migraine headaches, anxiety disorder, polysubstance abuse, and history of multiple facial fractures, right temporal skull fracture, multiple fractures of the right humerus and ulna, cerebral contusion, nailing of the right humerus and open reduction and internal fixation (ORIF) of the right radial shaft with closed reduction of the ulna shaft fracture, ORIF of the zygoma and orbital floor exploration, and hardware removal of the right radius; but (3) does not have an impairment or combination of impairments as listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15, 17). After considering the record, the ALJ found that Plaintiff has the physical RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the exception that he can only occasionally perform fine fingering, gross handling, pushing and pulling activities with the dominant, right upper extremity. (R. 19). The RFC assessment also included a finding that Plaintiff can occasionally interact with supervisors, coworkers and the general public. (*Id*.). Based on the testimony of the VE, the ALJ found that Plaintiff was unable to perform any past relevant work, which was all unskilled or semi-skilled labor. (R. 29, 57-58). However, Plaintiff was found to be a "younger individual" on the alleged onset date of disability because he was 32 years old. (R. 30); *see* 20 C.F.R. 404.1563 and 416.963. Taking into account Plaintiff's age, high school education, work experience, RFC and the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*.). The ALJ concluded that Plaintiff is not disabled as defined by the Act, and therefore not entitled to a period of disability, DIB or SSI. (R.31).

### III.     Plaintiff's Argument for Reversal

Plaintiff presents three arguments for reversing the decision of the ALJ. First, Plaintiff alleges that the ALJ's "credibility findings as to the frequency and severity of [P]laintiff's migraine headaches are entirely inadequate" because they were conducted with "an impermissible generalized

bias against claimants with problems of substance abuse." (Pl.'s Mem. 16). Second, Plaintiff argues that the ALJ "erred in refusing to consider the [vocational expert's] testimony that even occasional absences from work due to migraine headaches would render the claimant unable to work." (Pl.'s Mem. 17). Finally, Plaintiff contends that "[t]he ALJ's conclusion that the claimant can occasionally perform fine fingering[,] and gross handling[,] and pushing and pulling with his dominant right hand is also not supported by substantial evidence" because the ALJ "impermissibly relie[d] on [her] own personal experience in overcoming two broken wrists after an accident. (Pl.'s Mem. 18).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be

9

affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1259.

## V. Discussion

After carefully considering Plaintiff's arguments, the court concludes that the ALJ's decisions were supported by substantial evidence for the following reasons.

### a. The ALJ's Credibility Findings Were Not Conducted with an Impermissible Bias and Are Supported by Substantial Evidence

Plaintiff asserts that the ALJ's decision should be overturned because her credibility determinations regarding Plaintiff's history of drug use was either unsupported by substantial evidence or tainted by an impermissible bias against claimants with a history of substance abuse. (Pl's Mem. at 16). In making this argument, Plaintiff cites one sentence from the ALJ's decision in which she states that "[t]he records show the claimant initially complained of headaches when he began treatment with Dr. Boswell in December 2008, but the evidence shows the claimant was also abusing substances at that time." (Pl's Mem at 16) (citing R. 27). Plaintiff puts forth two interpretations for this statement. First, Plaintiff suggests that "[i]f the ALJ's conclusion here is that the claimant's substance abuse at the time was in fact the proximate cause of his headaches, there is no certainly no (sic) medical evidence in the record to support her hunch or guess that it was 'drugs' and not the plaintiff's severe head injury which was causing his severe headaches." (Pl's Mem at 16). Alternatively, Plaintiff states that "if the ALJ's conclusion here is that the claimant's complaints of headaches at that time are not credible because he was 'on drugs,' and therefore must have lied to Dr. Boswell about having frequent headaches, her conclusion reflects an impermissible generalized bias against claimants with problems of substance abuse." (*Id.*)

10

While hypothetical fact patterns are a customary part of a legal education, such speculation into what the ALJ meant is unnecessary here for two reasons. First, this court will not disturb the factual findings of the ALJ unless they are unsupported by substantial evidence.[1] Second, the ALJ's decision speaks for itself.

Reading the sentence cited by Plaintiff in context reveals that the ALJ was neither proceeding on an uninformed "guess" nor reaching determinations with "a generalized bias against claimants with problems of substance abuse." The ALJ's decision states, in relevant part:

> Medical records show the claimant sustained skull fracture and a cerebral contusion during the May 1996 accident, but he had no long-lasting affect from that injury. He returned to work as a draftsman without evidence of cognitive limitations or headaches. Medical records from 2000 through 2006 do not show the claimant reported headaches. As previously noted, the claimant reported he stopped working as a draftsman when the plant closed and not due to headaches. The records show the claimant initially complained of headaches when he began treatment with Dr. Boswell in December 2008, but the evidence shows the claimant was also abusing substances at that time. Dr. Boswell diagnosed migraine headaches and post-traumatic headaches, but his exam did not reveal neurological deficits or any other sign of a cerebral injury. Dr. Boswell did not refer the claimant to a neurologist for treatment of his headaches. The claimant told Dr. Long at the initial exam in October 2009 that he had headaches and facial pain, but again his exam was normal…claimant told Dr. Ali…that he had severe headaches…but the physical exam was normal…claimant reported headaches to Dr. Moizuddin…but again, no tests were requested and diagnosis was just headaches.

(R. 27) (emphasis added). This litany of factual findings belies Plaintiff's claim that there is "no medical evidence in the record" to support the ALJ's "hunch." As for Plaintiff's conjecture

---

[1] It is a function of the Commissioner, and not this court, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Savor v. Shalala,* 868 F.Supp. 1363, 1366 (M.D. Fla. 1994).

11

that the ALJ discounted Plaintiff's credibility because of an impermissible general bias,[2] the ALJ explains her credibility assessment in the decision:

> While the evidence of record shows the claimant may experience headaches, it does not support he claimant's allegations of severe, daily, disabling headaches. Again, the claimant's complaints of severe, daily pain are not fully credible as they are not supported by the evidence of record. No treating or consulting examiner has assess the claimant is disabled due to headaches…The claimant has not alleged he is disabled due to substance addiction. As previously noted, the claimant's reports at various times throughout the record regarding his substance use are inconsistent within themselves and inconsistent with the evidence. The claimant testified at the hearing he … had to stop working in part due to difficulty maintaining concentration, but that testimony is inconsistent with the claimant's reports to treating sources of why he stopped working… Records show the claimant abused many substances from 2002 through 2006. He entered substance abuse treatment programs at least twice during that period, but he did not comply with treatment.… The claimant began treatment with Dr. Long for pain management in October 2009, but he did not report his history of substance abuse to the doctor.…the claimant told Dr. Ali at the initial exam in April 2010 that he had anxiety, but he denied the use of recreational drugs.… claimant complained of anxiety and depression to Dr. Moizuddin in May 2010 and he denied recreational drug use.… The claimant told Dr. Blotcky that he had not used marijuana for 10 years, but again, that statement is inconsistent with the medical records that he was using marijuana during his 2008 treatment with Dr. Boswell.

(R. 28-29). As the record reveals, the ALJ did not discredit Plaintiff's testimony because he has a history of drug use, but rather because he has a history of discredited testimony. Plaintiff's first argument is therefore without merit.

---

[2] In case there are any questions about the propriety of an ALJ asking a claimant about his drug history, it should be noted that a claimant's history of drug use does indeed potentially affect eligibility under the Act; a claimant is not entitled to Social Security benefits if drug or alcohol abuse is a material factors contributing to his disability. 20 C.F.R. §§ 404.1535, 416.935.

> **b.    The ALJ Did Not Err in Declining to Consider "Facts" Not Supported by Evidence**

Plaintiff next submits that the ALJ erred in "refusing to consider the [vocational expert]'s testimony that even occasional absences from work due to migraine headaches would render the claimant unable to do work," noting that "[t]he ALJ is not free to simply ignore the [vocational expert]'s answers when they clearly establish the claimant's disability." (Pl.'s Mem. At 17-18). The testimony that Plaintiff argues "clearly establish[es] the claimant's disability" (Pl.'s Mem. at 17) comes from Plaintiff's cross examination of the vocational expert:

> Q    Okay.  If his pain was such that he testified to seven to eight on a bad day four days a week, every week, would that prevent him from being able to work any of these jobs?
>
> A    Well, if the pain were at that level on a chronic and sustained basis, *and* also interfered with his ability to sustain attention, concentration and pace, *to the extent* that it prevented him to perform his work to meet industry standards, I would say it would prevent work.

(R. 61 (emphasis added)).  To say that the vocational expert's response to a hypothetical question involving symptoms not supported by evidence "clearly establish[es] the claimant's disability" is disingenuous, to put it mildly.  This argument is predicated upon a factual finding that Plaintiff is actually disabled; however, as mentioned earlier, the ALJ determined based on substantial evidence Plaintiff is not disabled. This argument is likewise without merit.

> **c.    The ALJ's RFC Assessment of Plaintiff's Right Hand is Supported by Substantial Evidence**

Plaintiff alleges that substantial evidence does not support the ALJ's "conclusion that [Plaintiff] can occasionally perform fine fingering and gross handling and pushing and pulling with his dominant right hand." (Pl. Mem. 18).  The court finds the ALJ's RFC assessment supported by substantial evidence.

"'Handling' means having the ability to seize, hold, grasp, or turn an object. 'Fingering' means having [t]he ability to pick or pinch." *Moore v. Astrue*, 256 Fed. App'x 330, 332 (11th Cir. 2007) (citing S.S.R. 85-15 (1984)). The record shows that the ALJ's RFC assessment of Plaintiff's right hand is supported by substantial evidence. For example, the ALJ's findings are based upon the following evidence: after Plaintiff's injuries in 1996 and 1997, there is nothing to suggest that he had limited use of his right hand (R. 121-22, 124); although Plaintiff fractured his finger in the same hand in 2000, there is nothing in the record to show it did not heal properly (R. 69); no finger limitation has been alleged by Plaintiff (R. 132); while Plaintiff was being treated by Dr. Harrison from 2004-2006, there is no record Plaintiff had any hand or arm limitations (R. 69); in 2007, Plaintiff reported to Dr. Whitehead that he quit his job drafting at a mobile home factory when the plant shut down, rather than for problems associated with his hand and arm (R. 70; *see also* R. 276); Plaintiff was later unable to do farm work due to back pain, but not because of hand or arm pain (R. 70); claimant has in the past reported that he bathes, dresses, and grooms independently and has not reported any limitation in performing daily activities due to right hand or arm pain (R. 70; *see also* R. 276); though Plaintiff complained to Dr. Boswell of right hand and arm pain, Dr. Boswell's notes reveal that he found no abnormalities in Plaintiff's right hand and arm (R. 204, 215 219-20, 226, 229, 231-32, 239); no diagnoses or treatment was performed on Plaintiff's hand or arm under Dr. Boswell's direction (*See generally*, R. 203-51); similarly, Dr. Long neither found right arm abnormalities, nor did he prescribe any type of specialized treatment for Plaintiff's right hand or arm (R. 253-60); Dr. Long's prescription of anti-inflammatory and pain medication improved Plaintiff's symptoms (R. 253-56, 258); Plaintiff never mentioned his arm and hand pain to Dr. Ali in 2010 (R. 264, 271-73); Dr. Ali did not ever request upper extremity testing because his examination of Plaintiff revealed normal motor strength and no muscle atrophy, weakness or abnormality of

movement in any area (*Id.*); Dr. Ali never pursued testing for Plaintiff's arm and hand (*Id.*); while Plaintiff did report numbness in his fingers to Dr. Moizuddin in May 2010, Plaintiff did not allege pain from his right hand or arm (R. 266-68); and Dr. Moizuddin's physical of Plaintiff concluded no abnormalities in his right hand or arm (R. 267).

Considering the medical evidence available, as well as the fact that Plaintiff has been able to fill out forms,[3] take care of himself (R. 109, 276), and maintain employment at various times before he filed for disability (R. 70, 149) is also proof that bolsters the ALJ's RFC assessment. Therefore, the court finds that ALJ's decision is supported by substantial evidence.

## VI.    Conclusion

The court concludes that the ALJ's disability determination for Plaintiff during the period insured is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___24th___ day of September, 2012.

*[signature]*

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[3]*Compare* R. 53 (testifying unable to write and sign legibly), *with* R. 149-53 (handwritten application for disability), *and with* R. 207 (signature), 237 (signature), and 243 (signature).